**FILED**
CLERK, U.S. DISTRICT COURT

8/28/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: ___jb_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>STEVEN F. BROWN,<br><br>        Defendant. | CR No.  2:20CR381 PSG<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1343: Wire Fraud] |

The United States Attorney charges:

[18 U.S.C. § 1343]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant STEVEN F. BROWN was a resident of Marina Del Rey, California, within the Central District of California.

2.   In February 2014, defendant BROWN incorporated Alpha Trade Analytics, Inc. ("Alpha Trade"), a company he controlled and operated largely out of his Marina Del Rey residence.  Defendant BROWN variously described Alpha Trade as providing financial analysis and investment strategies and as operating an investment fund.  Neither defendant BROWN nor Alpha Trade was registered with the Securities

and Exchange Commission as a broker or dealer in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

3.  Defendant BROWN was also employed by a non-profit organization providing dance and theater arts education to children and young adults in Los Angeles (the "Dance Academy"), and acted as the Dance Academy's accountant until his termination in or around June 2018. Defendant BROWN was a signer on the Dance Academy's bank accounts, including a Wells Fargo account.

B.   THE SCHEME TO DEFRAUD

4.  Beginning in or around April 2014, and continuing until at least in or around May 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendant BROWN, together with others known and unknown to the United States Attorney, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud investors as to material matters, and to obtain moneys, funds, assets, and other property owned by and in the custody and control of such investors by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

5.  The fraudulent scheme operated and was carried out, in substance, as follows:

a.  Defendant BROWN solicited investments in Alpha Trade, including from individuals he encountered through his position at the Dance Academy and his relationship with its executives and employees, which afforded him access to and the trust of social networks of supportive entrepreneurs and high-net-worth individuals.

b.  To encourage those individuals to invest with Alpha Trade, defendant BROWN falsely promised that the individuals'

investments would only be used for Forex trading and falsely represented that he had extensive experience in Forex investing and was regularly able to make profitable trades and achieve substantial and growing rates of return that exceeded the industry average.

   c. Defendant BROWN also made false and fraudulent representations about the terms of those investments, including claims that:

    i. the "capital" provided by the investors would belong to those investors at all times;

    ii. investors would receive a guaranteed recurring payout generally based on a significant percentage (often 10% monthly) of the total amount of their investment;

    iii. all investment losses would be borne by Alpha Trade;

    iv. investments were vetted, insured, and/or bonded; and

    v. Alpha Trade would keep up-to-date books of accounts and provide investors with access to those books.

   d. Investors, relying on these false and fraudulent claims, which were material to their investment decisions, would send money, often by wire or check, to Alpha Trade at defendant BROWN's direction.  Defendant BROWN deposited and caused these funds to be deposited into Alpha Trade bank accounts.

   e. Defendant BROWN opened several Forex trading accounts in Alpha Trade's name, often falsely claiming to those trading companies that Alpha Trade did not solicit investments and would not be using any third-party investments in its trading.  Although defendant BROWN initially used some funds from Alpha Trade's bank

accounts to engage in Forex trading through these trading accounts, he did so knowing that, contrary to his representations to investors, (1) he had little experience in live Forex trading, (2) he had not allocated the funds in either the Alpha Trade bank or trading accounts to any particular investor or maintained any comprehensive accounting of those investments and thus had no way of tracking individual investments or their profits or losses, and (3) his Forex trades were often not profitable or not profitable enough to support the high guaranteed recurring payouts he had promised.  Even after seeing that his Forex trading performance was poor almost from the outset, defendant BROWN continued to solicit new investors for years based on false claims of his Forex trading prowess and fraudulent promises of high guaranteed returns.

    f. Moreover, contrary to defendant BROWN's representations to investors, he only used a small portion of the total amount invested in Alpha Trade for Forex trading, mostly in 2015, and routinely used investor funds for other purposes, including to pay other investors and to pay his own personal expenses, including rent, car payments, and restaurant and retail expenses.

    g. In order to induce investors to maintain or increase their investments with Alpha Trade and to conceal his scheme, defendant BROWN (1) periodically provided investors with account statements that reflected fabricated investment returns (often showing steady significant gains), and (2) made some of the promised recurring payouts and provided demanded refunds, not based on any Forex investment returns, but instead using funds from new investors and funds defendant BROWN embezzled from the Dance Academy through

4

unauthorized wire transfers, credit card advances, and cash withdrawals.

       h.   For many of the investors, defendant BROWN failed to make the promised recurring payments or return the investments upon demand as promised.

    6.   During the course of the scheme, defendant BROWN, through Alpha Trade, caused losses of approximately $3,313,346 to more than 10 victims, including nearly $700,000 in losses to the Dance Academy based on funds defendant BROWN embezzled from the Dance Academy to perpetuate his scheme.

C.    <u>USE OF THE WIRES</u>

    7.   On or about August 3, 2017, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant BROWN transmitted and caused the transmission of approximately $300,000 through the interstate Fedwire system from the Dance Academy's Wells

//
//
//
//
//
//
//

Fargo bank account to Alpha Trade's Citibank bank account by means of wire and radio communication in interstate and foreign commerce.

NICOLA T. HANNA
United States Attorney

*Scott M. Garringer*
*Deputy Chief, Criminal Division For:*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

KRISTEN A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Major Frauds Section