```
                                              FILED
                                       CLERK, U.S. DISTRICT COURT

                                          8/28/2020

                                       CENTRAL DISTRICT OF CALIFORNIA
                                       BY:      jb        DEPUTY
```

1  NICOLA T. HANNA
   United States Attorney
2  BRANDON D. FOX
   Assistant United States Attorney
3  Chief, Criminal Division
   KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
4  Assistant United States Attorney
   Deputy Chief, Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-0526
7       Facsimile: (213) 894-6269
        E-mail:   Kristen.Williams@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. CR    2:20CR381 PSG

13            Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                     STEVEN F. BROWN
14            v.

15  STEVEN F. BROWN,

16            Defendant.

17

18       1.   This constitutes the plea agreement between Steven F. Brown

19  ("defendant") and the United States Attorney's Office for the Central

20  District of California (the "USAO") in the investigation of (1) a

21  fraudulent scheme regarding investments in Alpha Trade Analytics,

22  Inc., and (2) embezzlement from defendant's non-profit employer.

23  This agreement is limited to the USAO and cannot bind any other

24  federal, state, local, or foreign prosecuting, enforcement,

25  administrative, or regulatory authorities.

26                    DEFENDANT'S OBLIGATIONS

27       2.   Defendant agrees to:

28

1        a.   Give up the right to indictment by a grand jury and,

2 at the earliest opportunity requested by the USAO and provided by the

3 Court, appear and plead guilty to a single-count information in the

4 form attached to this agreement as Exhibit A or a substantially

5 similar form, which charges defendant with Wire Fraud, in violation

6 of 18 U.S.C. § 1343.

7        b.   Not contest facts agreed to in this agreement.

8        c.   Abide by all agreements regarding sentencing contained

9 in this agreement.

10       d.   Appear for all court appearances, surrender as ordered

11 for service of sentence, obey all conditions of any bond, and obey

12 any other ongoing court order in this matter.

13       e.   Agree that all court appearances, including his change

14 of plea hearing and sentencing hearing, may proceed by video-

15 teleconference ("VTC") or telephone, if VTC is not reasonably

16 available, so long as such appearances are authorized by General

17 Order 20-043 or another order, rule, or statute.  Defendant

18 understands that, under the Constitution, the United States Code, the

19 Federal Rules of Criminal Procedure (including Rules 11, 32, and 43),

20 he may have the right to be physically present at these hearings.

21 Defendant understands that right and, after consulting with counsel,

22 voluntarily agrees to waive it and to proceed remotely.  Defense

23 counsel also joins in this consent, agreement, and waiver.

24 Specifically, this agreement includes, but is not limited to, the

25 following:

26       i.   Defendant consents under Federal Rules of

27 Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES

28

1  Act to proceed with his initial appearance and arraignment by VTC or
2  telephone, if VTC is not reasonably available.

3          ii.   Defendant consents under Section 15002(b) of the
4  CARES Act to proceed with his waiver of indictment, under Federal
5  Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not
6  reasonably available.

7          iii. Defendant consents under Section 15002(b) of the
8  CARES Act to proceed with his change of plea hearing by VTC or
9  telephone, if VTC is not reasonably available.

10          iv.   Defendant consents under Section 15002(b) of the
11  CARES Act to proceed with his sentencing hearing by VTC or telephone,
12  if VTC is not reasonably available.

13          v.    Defendant consents under 18 U.S.C. § 3148 and
14  Section 15002(b) of the CARES Act to proceed with any hearing
15  regarding alleged violations of the conditions of pretrial release by
16  VTC or telephone, if VTC is not reasonably available.

17          f.    Not commit any crime; however, offenses that would be
18  excluded for sentencing purposes under United States Sentencing
19  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
20  within the scope of this agreement.

21          g.    Be truthful at all times with the United States
22  Probation and Pretrial Services Office and the Court.

23          h.    Pay the applicable special assessment at or before the
24  time of sentencing unless defendant has demonstrated a lack of
25  ability to pay such assessments.

26          i.    Not seek the discharge of any restitution obligation,
27  in whole or in part, in any present or future bankruptcy proceeding.

28

## THE USAO'S OBLIGATIONS

3.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.    Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 24 or higher.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

e.    Should the Court sentence defendant to a term of imprisonment, recommend that defendant not be required to self-surrender to serve his sentence until on or after February 1, 2021, unless defendant violates the conditions of his bond.

## NATURE OF THE OFFENSE

4.    Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) defendant knowingly devised or participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent

4

1  pretenses, representations, or promises; (2) the statements made or
2  facts omitted as a part of the scheme were material; that is, they
3  had a natural tendency to influence, or were capable of influencing,
4  a person to part with money or property; (3) defendant acted with the
5  intent to defraud, that is, the intent to deceive or cheat; and (4)
6  defendant used, or caused to be used, an interstate wire
7  communication to carry out or attempt to carry out an essential part
8  of the scheme.

9                          <u>PENALTIES AND RESTITUTION</u>

10       5.   Defendant understands that the statutory maximum sentence
11  that the Court can impose for a violation of Title 18, United States
12  Code, Section 1343, is: 20 years' imprisonment; a 3-year period of
13  supervised release; a fine of $250,000 or twice the gross gain or
14  gross loss resulting from the offense, whichever is greatest; and a
15  mandatory special assessment of $100.

16       6.   Defendant understands that defendant will be required to
17  pay full restitution to the victims of the offense to which defendant
18  is pleading guilty.  Defendant agrees that, in return for the USAO's
19  compliance with its obligations under this agreement, the Court may
20  order restitution to persons other than the victims of the offense to
21  which defendant is pleading guilty and in amounts greater than those
22  alleged in the count to which defendant is pleading guilty.  In
23  particular, defendant agrees that the Court may order restitution to
24  any victim of any relevant conduct, as defined in U.S.S.G. § 1B1.3,
25  in connection with the offense to which defendant is pleading guilty
26  for any losses suffered by that victim as a result.  The parties
27  currently believe that the applicable amount of restitution is
28  approximately $3,313,346, but recognize and agree that this amount

                                   5

1  could change based on facts that come to the attention of the parties

2  prior to sentencing.

3       7.   Defendant agrees that any and all fines and/or restitution

4  ordered by the Court will be due immediately.  The government is not

5  precluded from pursuing, in excess of any payment schedule set by the

6  Court, any and all available remedies by which to satisfy defendant's

7  payment of the full financial obligation, including referral to the

8  Treasury Offset Program.

9       8.   Defendant understands that supervised release is a period

10 of time following imprisonment during which defendant will be subject

11 to various restrictions and requirements.  Defendant understands that

12 if defendant violates one or more of the conditions of any supervised

13 release imposed, defendant may be returned to prison for all or part

14 of the term of supervised release authorized by statute for the

15 offense that resulted in the term of supervised release, which could

16 result in defendant serving a total term of imprisonment greater than

17 the statutory maximum stated above.

18      9.   Defendant understands that, by pleading guilty, defendant

19 may be giving up valuable government benefits and valuable civic

20 rights, such as the right to vote, the right to possess a firearm,

21 the right to hold office, and the right to serve on a jury. Defendant

22 understands that he is pleading guilty to a felony and that it is a

23 federal crime for a convicted felon to possess a firearm or

24 ammunition.  Defendant understands that the conviction in this case

25 may also subject defendant to various other collateral consequences,

26 including but not limited to revocation of probation, parole, or

27 supervised release in another case and suspension or revocation of a

28 professional license.  Defendant understands that unanticipated

1 │ collateral consequences will not serve as grounds to withdraw
2 │ defendant's guilty plea.
3 │    10.   Defendant and his counsel have discussed the fact that, and
4 │ defendant understands that, if defendant is not a United States
5 │ citizen, the conviction in this case makes it practically inevitable
6 │ and a virtual certainty that defendant will be removed or deported
7 │ from the United States.   Defendant may also be denied United States
8 │ citizenship and admission to the United States in the future.
9 │ Defendant understands that while there may be arguments that
10 │ defendant can raise in immigration proceedings to avoid or delay
11 │ removal, removal is presumptively mandatory and a virtual certainty
12 │ in this case.   Defendant further understands that removal and
13 │ immigration consequences are the subject of a separate proceeding and
14 │ that no one, including his/her attorney or the Court, can predict to
15 │ an absolute certainty the effect of his conviction on his immigration
16 │ status.   Defendant nevertheless affirms that he wants to plead guilty
17 │ regardless of any immigration consequences that his plea may entail,
18 │ even if the consequence is automatic removal from the United States.
19 │                          FACTUAL BASIS
20 │    11.   Defendant admits that defendant is, in fact, guilty of the
21 │ offense to which defendant is agreeing to plead guilty.   Defendant
22 │ and the USAO agree to the statement of facts provided below and agree
23 │ that this statement of facts is sufficient to support a plea of
24 │ guilty to the charge described in this agreement and to establish the
25 │ Sentencing Guidelines factors set forth in paragraph 13 below but is
26 │ not meant to be a complete recitation of all facts relevant to the
27 │ underlying criminal conduct or all facts known to either party that
28 │ relate to that conduct.

1     Defendant controlled and operated Alpha Trade Analytics, Inc.
2  ("Alpha Trade"), a financial consulting and investment company,
3  largely out of his residence in Marina Del Rey, California, within
4  the Central District of California.  Neither defendant nor Alpha
5  Trade was a registered broker or dealer in securities.  Defendant
6  also served as the accountant for a non-profit organization providing
7  dance and theater arts education to children and young adults in Los
8  Angeles (the "Dance Academy") and had access to its bank accounts.
9  In that capacity, defendant held a position of trust with the Dance
10 Academy.

11     Beginning in or around April 2014, and continuing until at least
12 in or around May 2018, in Los Angeles County, within the Central
13 District of California, and elsewhere, defendant knowingly and with
14 intent to defraud, devised, participated in, and executed a scheme to
15 defraud investors as to material matters, and to obtain moneys,
16 funds, assets, and other property owned by and in the custody and
17 control of such investors by means of material false and fraudulent
18 pretenses, representations, and promises, and the concealment of
19 material facts.

20     Defendant solicited investments in Alpha Trade, including from
21 individuals he encountered through his position at the Dance Academy
22 and through his relationship with its executives and employees, which
23 afforded him access to and the trust of social networks of supportive
24 entrepreneurs and high-net-worth individuals.  To encourage those
25 individuals to invest with Alpha Trade, defendant falsely promised
26 that the individuals' investments would only be used for Forex
27 trading and falsely represented that he had extensive experience in
28 Forex investing and was regularly able to make profitable trades and

1  achieve substantial and growing rates of return that exceeded the
2  industry average.
3       Defendant also made false and fraudulent representations about
4  the terms of those investments, including claims that: (1) the
5  "capital" provided by the investors would belong to those investors
6  at all times; (2) investors would receive a guaranteed recurring
7  payout generally based on a percentage (often 10% monthly) of the
8  total amount of their investment; (3) all investment losses would be
9  borne by Alpha Trade; (4) investments were vetted, insured, and/or
10  bonded; and (5) Alpha Trade would keep up-to-date books of accounts
11  and provide investors with access to those books.
12       Investors relied on these false and fraudulent claims, which
13  were material to their investment decisions, and sent money, often by
14  wire or check, to Alpha Trade at defendant's direction.   Defendant
15  deposited these funds into Alpha Trade bank accounts.
16       Defendant opened several Forex trading accounts in Alpha Trade's
17  name, often falsely claiming to those trading companies that Alpha
18  Trade did not solicit investments and would not be using any third-
19  party investments in its trading.   Although defendant initially used
20  some funds from Alpha Trade's bank accounts to engage in Forex
21  trading through these trading accounts, he did so knowing that,
22  contrary to his representations to investors, (1) he had little
23  experience in live Forex trading, (2) he had not allocated the funds
24  in either the Alpha Trade bank or trading accounts to any particular
25  investor or maintained any comprehensive accounting of those
26  investments and thus had no way of tracking individual investments or
27  their profits or losses, and (3) his Forex trades were often not
28  profitable or not profitable enough to support the high guaranteed

1  recurring payouts he had promised.  Even after seeing that his Forex

2  trading performance was poor almost from the outset, defendant

3  continued to solicit new investors for years based on false claims of

4  his Forex trading prowess and fraudulent promises of high guaranteed

5  returns.

6      Contrary to defendant's representations to investors, defendant

7  only used a small portion of the total amount invested in Alpha Trade

8  for Forex trading, mostly in 2015, and routinely used investor funds

9  for other purposes, including to pay other investors and to pay his

10 own personal expenses, including rent, car payments, and restaurant

11 and retail expenses.

12     In order to induce investors to maintain or supplement their

13 investments with Alpha Trade and to conceal his scheme, defendant (1)

14 periodically provided investors with account statements that

15 reflected fabricated investment returns (often showing steady,

16 significant gains), and (2) made some of the promised recurring

17 payouts and provided demanded refunds, not based on any Forex

18 investment returns, but instead using funds from new investors and

19 funds defendant embezzled from the Dance Academy through unauthorized

20 wire transfers, credit card advances, and cash withdrawals he was

21 able to make and conceal by virtue of his position as the Dance

22 Academy's accountant.  For many of the investors, however, defendant

23 failed to make the promised recurring payments or return the

24 investments upon demand as promised.

25     In executing the above scheme, defendant used and caused the use

26 of wire transmissions in interstate commerce.  Specifically, on or

27 about August 3, 2017, defendant transmitted and caused to be

28 transmitted in interstate commerce a wire transfer of approximately

$300,000 from the Dance Academy's Wells Fargo bank account ending in x7333 to Alpha Trade's Citibank bank account ending in x9586.

During the course of the scheme, defendant, through Alpha Trade, caused losses of approximately $3,313,346 to more than 10 victims, including nearly $700,000 in losses to the Dance Academy based on funds defendant embezzled from the Dance Academy to perpetuate his scheme.

## SENTENCING FACTORS

12.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss Between $1.5 million And $3.5 million | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| More than 10 victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |
| Abuse of a Position of Trust Or Use of a Special Skill: | +2 | U.S.S.G. § 3B1.3 |

11

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

14.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.   The right to persist in a plea of not guilty.

     b.   The right to a speedy and public trial by jury.

     c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

     d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

     e.   The right to confront and cross-examine witnesses against defendant.

 f.   The right to testify and to present evidence in
opposition to the charges, including the right to compel the
attendance of witnesses to testify.

 g.   The right not to be compelled to testify, and, if
defendant chose not to testify or present evidence, to have that
choice not be used against defendant.

 h.   Any and all rights to pursue any affirmative defenses,
Fourth Amendment or Fifth Amendment claims, and other pretrial
motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

17.  Defendant understands that, with the exception of an appeal
based on a claim that defendant's guilty plea was involuntary, by
pleading guilty defendant is waiving and giving up any right to
appeal defendant's conviction on the offense to which defendant is
pleading guilty.  Defendant understands that this waiver includes,
but is not limited to, arguments that the statute to which defendant
is pleading guilty is unconstitutional, and any and all claims that
the statement of facts provided herein is insufficient to support
defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18.  Defendant agrees that, provided the Court imposes a term of
imprisonment within or below the range corresponding to an offense
level of 24 and the criminal history category calculated by the
Court, defendant gives up the right to appeal all of the following:
(a) the procedures and calculations used to determine and impose any
portion of the sentence; (b) the term of imprisonment imposed by the
Court; (c) the fine imposed by the Court, provided it is within the
statutory maximum; (d) to the extent permitted by law, the

13

constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $3,313,346.35; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 24 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $3,313,346.35.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

1

EFFECTIVE DATE OF AGREEMENT

2      21.  This agreement is effective upon signature and execution of
3  all required certifications by defendant, defendant's counsel, and an
4  Assistant United States Attorney.

5

BREACH OF AGREEMENT

6      22.  Defendant agrees that if defendant, at any time after the
7  signature of this agreement and execution of all required
8  certifications by defendant, defendant's counsel, and an Assistant
9  United States Attorney, knowingly violates or fails to perform any of
10  defendant's obligations under this agreement ("a breach"), the USAO
11  may declare this agreement breached.  All of defendant's obligations
12  are material, a single breach of this agreement is sufficient for the
13  USAO to declare a breach, and defendant shall not be deemed to have
14  cured a breach without the express agreement of the USAO in writing.
15  If the USAO declares this agreement breached, and the Court finds
16  such a breach to have occurred, then: (a) if defendant has previously
17  entered a guilty plea pursuant to this agreement, defendant will not
18  be able to withdraw the guilty plea, and (b) the USAO will be
19  relieved of all its obligations under this agreement.

20

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

21

OFFICE NOT PARTIES

22      23.  Defendant understands that the Court and the United States
23  Probation and Pretrial Services Office are not parties to this
24  agreement and need not accept any of the USAO's sentencing
25  recommendations or the parties' agreements to facts or sentencing
26  factors.

27      24.  Defendant understands that both defendant and the USAO are
28  free to: (a) supplement the facts by supplying relevant information

15

to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 13 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

25.  Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty plea, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be within
the statutory maximum.

## NO ADDITIONAL AGREEMENTS

26.  Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the USAO
and defendant or defendant's attorney, and that no additional

16

promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

27. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____          8/20/20
KRISTEN A. WILLIAMS                        _____
Assistant United States Attorney          Date

_____          8.20.20 20
STEVEN F. BROWN                           _____
Defendant                                 Date

_____          8/20/20
MATTHEW LOMBARD                           _____
Attorney for Defendant STEVEN F. BROWN    Date

17

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____       8·20·20
STEVEN F. BROWN                        _____
Defendant                              Date

18

1

### CERTIFICATION OF DEFENDANT'S ATTORNEY

2    I am Steven Brown's attorney.  I have carefully and thoroughly
3    discussed every part of this agreement with my client.  Further, I
4    have fully advised my client of his rights, of possible pretrial
5    motions that might be filed, of possible defenses that might be
6    asserted either prior to or at trial, of the sentencing factors set
7    forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
8    provisions, and of the consequences of entering into this agreement.
9    To my knowledge: no promises, inducements, or representations of any
10   kind have been made to my client other than those contained in this
11   agreement; no one has threatened or forced my client in any way to
12   enter into this agreement; my client's decision to enter into this
13   agreement is an informed and voluntary one; and the factual basis set
14   forth in this agreement is sufficient to support my client's entry of
15   a guilty plea pursuant to this agreement.

16

17   _____          _____ 8/16/20 _____
     MATTHEW LOMBARD                              Date
18   Attorney for Defendant STEVEN F. BROWN

19

20

21

22

23

24

25

26

27

28

# Exhibit A

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11              Plaintiff,              I N F O R M A T I O N

12              v.                      [18 U.S.C. § 1343: Wire Fraud]

13   STEVEN F. BROWN,

14              Defendant.

15

16        The United States Attorney charges:

17                          [18 U.S.C. § 1343]

18   A.    INTRODUCTORY ALLEGATIONS

19        At times relevant to this Information:

20        1.    Defendant STEVEN F. BROWN was a resident of Marina Del Rey,

21   California, within the Central District of California.

22        2.    In February 2014, defendant BROWN incorporated Alpha Trade

23   Analytics, Inc. ("Alpha Trade"), a company he controlled and operated

24   largely out of his Marina Del Rey residence.  Defendant BROWN

25   variously described Alpha Trade as providing financial analysis and

26   investment strategies and as operating an investment fund.  Neither

27   defendant BROWN nor Alpha Trade was registered with the Securities

28

1   and Exchange Commission as a broker or dealer in accordance with
2   Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).
3        3.   Defendant BROWN was also employed by a non-profit
4   organization providing dance and theater arts education to children
5   and young adults in Los Angeles (the "Dance Academy"), and acted as
6   the Dance Academy's accountant until his termination in or around
7   June 2018.  Defendant BROWN was a signer on the Dance Academy's bank
8   accounts, including a Wells Fargo account ending in x7333.
9   B.   THE SCHEME TO DEFRAUD
10       4.   Beginning in or around April 2014, and continuing until at
11  least in or around May 2018, in Los Angeles County, within the
12  Central District of California, and elsewhere, defendant BROWN,
13  together with others known and unknown to the United States Attorney,
14  knowingly and with intent to defraud, devised, participated in, and
15  executed a scheme to defraud investors as to material matters, and to
16  obtain moneys, funds, assets, and other property owned by and in the
17  custody and control of such investors by means of material false and
18  fraudulent pretenses, representations, and promises, and the
19  concealment of material facts.
20       5.   The fraudulent scheme operated and was carried out, in
21  substance, as follows:
22            a.   Defendant BROWN solicited investments in Alpha Trade,
23  including from individuals he encountered through his position at the
24  Dance Academy and his relationship with its executives and employees,
25  which afforded him access to and the trust of social networks of
26  supportive entrepreneurs and high-net-worth individuals.
27            b.   To encourage those individuals to invest with Alpha
28  Trade, defendant BROWN falsely promised that the individuals'

2

1    investments would only be used for Forex trading and falsely

2    represented that he had extensive experience in Forex investing and

3    was regularly able to make profitable trades and achieve substantial

4    and growing rates of return that exceeded the industry average.

5          c.    Defendant BROWN also made false and fraudulent

6    representations about the terms of those investments, including

7    claims that:

8                i.    the "capital" provided by the investors would

9    belong to those investors at all times;

10               ii.   investors would receive a guaranteed recurring

11   payout generally based on a significant percentage (often 10%

12   monthly) of the total amount of their investment;

13               iii. all investment losses would be borne by Alpha

14   Trade;

15               iv.   investments were vetted, insured, and/or bonded;

16   and

17               v.    Alpha Trade would keep up-to-date books of

18   accounts and provide investors with access to those books.

19         d.    Investors, relying on these false and fraudulent

20   claims, which were material to their investment decisions, would send

21   money, often by wire or check, to Alpha Trade at defendant BROWN's

22   direction.   Defendant BROWN deposited and caused these funds to be

23   deposited into Alpha Trade bank accounts.

24         e.    Defendant BROWN opened several Forex trading accounts

25   in Alpha Trade's name, often falsely claiming to those trading

26   companies that Alpha Trade did not solicit investments and would not

27   be using any third-party investments in its trading.   Although

28   defendant BROWN initially used some funds from Alpha Trade's bank

accounts to engage in Forex trading through these trading accounts, he did so knowing that, contrary to his representations to investors, (1) he had little experience in live Forex trading, (2) he had not allocated the funds in either the Alpha Trade bank or trading accounts to any particular investor or maintained any comprehensive accounting of those investments and thus had no way of tracking individual investments or their profits or losses, and (3) his Forex trades were often not profitable or not profitable enough to support the high guaranteed recurring payouts he had promised.  Even after seeing that his Forex trading performance was poor almost from the outset, defendant BROWN continued to solicit new investors for years based on false claims of his Forex trading prowess and fraudulent promises of high guaranteed returns.

       f.   Moreover, contrary to defendant BROWN's representations to investors, he only used a small portion of the total amount invested in Alpha Trade for Forex trading, mostly in 2015, and routinely used investor funds for other purposes, including to pay other investors and to pay his own personal expenses, including rent, car payments, and restaurant and retail expenses.

       g.   In order to induce investors to maintain or increase their investments with Alpha Trade and to conceal his scheme, defendant BROWN (1) periodically provided investors with account statements that reflected fabricated investment returns (often showing steady significant gains), and (2) made some of the promised recurring payouts and provided demanded refunds, not based on any Forex investment returns, but instead using funds from new investors and funds defendant BROWN embezzled from the Dance Academy through

4

1  unauthorized wire transfers, credit card advances, and cash
2  withdrawals.
3         h.   For many of the investors, defendant BROWN failed to
4  make the promised recurring payments or return the investments upon
5  demand as promised.
6      6.   During the course of the scheme, defendant BROWN, through
7  Alpha Trade, caused losses of approximately $3,313,346 to more than
8  10 victims, including nearly $700,000 in losses to the Dance Academy
9  based on funds defendant BROWN embezzled from the Dance Academy to
10 perpetuate his scheme.
11 C.   USE OF THE WIRES
12     7.   On or about August 3, 2017, in Los Angeles County, within
13 the Central District of California, and elsewhere, for the purpose of
14 executing the above-described scheme to defraud, defendant BROWN
15 transmitted and caused the transmission of approximately $300,000
16 through the interstate Fedwire system from the Dance Academy's Wells
17 Fargo bank account ending in x7333 to Alpha Trade's Citibank bank
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25
26
27
28

5

account ending in x9586 by means of wire and radio communication in
interstate and foreign commerce.

NICOLA T. HANNA
United States Attorney


BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

KRISTEN A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Major Frauds Section

**CERTIFICATE OF SERVICE**

I, **Brenda Gervais,** declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:
PLEA AGREEMENT

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☒ Via email, as follows:
mlombard@lombardlaw.net

☐ By Federal Express, as follows:

This Certificate is executed on **August 28, 2020,** at Los Angeles, California.  I certify under penalty of perjury that the foregoing is true and correct.

*Brenda C. Gervais*
Brenda C. Gervais
Legal Assistant